Alden JORDAN, et al.

v.

## BOOTHBAY REGION REFUSE DISPOSAL DISTRICT.

Supreme Judicial Court of Maine.

Argued Jan. 23, 1995.

Decided March 27, 1995.

Edward G. Dardis (orally), Howard & Bowie, Damariscotta, for plaintiff.

Franklin A. Poe (orally), Boothbay Harbor, for defendant.

1. Dana, J., sat at oral argument but did not participate further.

2. 38 M.R.S.A. § 1705(2) provides: " 'Demolition and construction waste' means all solid waste

Before ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, DANA [1] and LIPEZ, JJ.

RUDMAN, Justice.

Alden Jordan and Jordan Construction Company, Inc. (Jordan) appeal from a judgment entered in the Superior Court (Lincoln County, Perkins, A.R.J.) granting a summary judgment to Boothbay Region Refuse Disposal District (District) because the trial court determined "that there was no genuine issue as to any material fact" and that the Maine Tort Claims Act, 14 M.R.S.A. §§ 8101–8118 (1980 & Supp.1994), rendered the District immune from Jordan's claim for unjust enrichment. Because the facts as alleged by Jordan are insufficient to support a claim for unjust enrichment, we affirm the judgment.

Viewed in the light most favorable to Jordan the record before the Superior Court supports the following facts. The District, comprised of the municipalities of Boothbay, Boothbay Harbor, Southport, and Edgecomb, is a refuse disposal district formed pursuant to the Maine Refuse Disposal District Enabling Act, 38 M.R.S.A. §§ 1701–57 (1989 & Supp.1994). Accordingly, the District has an obligation to "provide a system for disposal of all solid waste generated by residential and commercial activities within [its] member municipalities," a contingent obligation to dispose of industrial solid waste, and the discretion to provide for the disposal of demolition waste.[2] Id. § 1726(2).

In December 1990 the District entered an agreement with the City of Rockland whereby Rockland granted the District the right to dispose annually of 5500 cubic yards of demolition debris in Rockland's disposal facility. In return, the District agreed to pay Rockland $275 for each 50 cubic yard load delivered to the Rockland disposal site. Despite its ability to dispose of demolition debris, the District did not adopt a written policy re-

generated in the demolition and construction of buildings and other structures, including stumps, brush, plaster, sheetrock, boards, bricks, mortar, concrete and roofing materials except asbestos."

garding its acceptance. The District had, however, an unspecified history of accepting demolition and construction waste.

In 1991 a Department of Marine Resources facility in Boothbay Harbor underwent demolition. During Phase I of the demolition, the District accepted demolition waste from this site. In view of the cost incurred by the District in disposing of Phase I waste, however, the District decided not to accept demolition waste from Phase II of the demolition.

On November 1, 1991, Jordan attended the bidders' conference for the Phase II demolition. Jordan contacted the District's manager, Alex Dmitrieff, and inquired whether the District would dispose of the demolition debris. Dmitrieff informed Jordan that the District had revised its policies and was no longer accepting demolition waste if the source was a non-taxpaying entity. Dmitrieff gave Jordan the names of other places that would accept demolition debris. On November 12 Jordan received from the project engineering firm a memorandum pertaining to bidding on the demolition contract. The memorandum reaffirmed that the District would not accept demolition debris from the site and that bidders should pursue private disposal sources. Jordan accordingly made arrangements with the City of Rockland to dispose of the waste at Rockland's facility.

On November 14 the State awarded the Phase II demolition contract to Jordan. At the same time, Jordan's arrangement with Rockland fell through, prompting Jordan to again contact Dmitrieff, who agreed to permit Jordan to dispose of the debris at the Rockland facility pursuant to the District's disposal agreement with Rockland. Jordan agreed that for every load of demolition debris Jordan delivered to Rockland, Jordan would reimburse the District the fee Rockland charged the District. Between November 29 and December 12, 1991, Jordan delivered twelve loads of debris to Rockland. Jordan paid $2,100 in trucking expenses and reimbursed the District $2,475 for disposal fees.

In May 1992, after the completion of the Phase II demolition, the District formally adopted a policy to accept all "acceptable" demolition debris and construction waste generated by residential and commercial activities within the member municipalities. After discovering this policy change, Jordan made several unsuccessful attempts to obtain reimbursement directly from the District for the costs Jordan incurred in disposing of the Phase II waste. Finally, Jordan brought this action against the District in 1993 alleging that the District unlawfully collected a fee from Jordan for the disposal of the demolition debris, and that the District was thereby unjustly enriched.

Both parties moved for a summary judgment. The Superior Court granted a summary judgment to the District on the basis that the Maine Tort Claims Act provided the District immunity from Jordan's suit. Jordan contends that the trial court erroneously granted the judgment because the Tort Claims Act does not provide immunity from an action for unjust enrichment. Before addressing whether the Tort Claims Act applies to suits for unjust enrichment, we must consider whether Jordan alleges facts sufficient to support a claim for unjust enrichment.

To support such a claim, Jordan would have to establish: (1) that Jordan conferred a benefit by paying the District a sum of money necessary for the disposal of the waste at the Rockland facility; (2) that the District had knowledge of this payment; and (3) that it would be inequitable for the District to retain the amount of this payment because the District had an obligation to accept the demolition debris without charging a fee. See Bowden v. Grindle, 651 A.2d 347, 350 (Me.1994). In order for Jordan's claim to survive a summary judgment, Jordan must show that there is, at least, a genuine issue of whether the District had an obligation to accept the demolition waste without charging a fee. The District argues that as a matter of law it had no such obligation. We agree.

Neither the Maine Refuse Disposal District Enabling Act nor the District's operating rules required the District to accept the demolition waste without charging a fee. The Act explicitly permits a district to provide for the disposal of demolition waste, 38 M.R.S.A. § 1726(2) (1989), but also permits a

district to refuse to accept such waste by authorizing districts to "refuse to accept any material which does not meet the definition of solid waste from residential, commercial or industrial activities." *Id.* § 1726(4).[3] In addition, the Act states:

The directors may from time to time establish and adjust a structure for fees, including penalty charges, for collection services and transportation and for disposal of solid waste in and upon facilities operated by, on behalf of or under contract with, the district, subject to section 1752.

*Id.* § 1739.

All persons, firms and corporations, whether public, private or municipal, shall pay to the treasurer of any district formed under this chapter the rates, tolls, assessments, rents, tipping fees, transportation charges and other charges established by the directors for services provided by the district.... A district may establish schedules of charges by any method determined by the directors.

*Id.* § 1752.

The District's by-laws pertaining to its responsibility to accept solid waste read in pertinent part:

The District shall provide a system for disposal of all solid waste generated by residential and commercial activities within the member municipalities. The District may provide for the disposal of any or all demolition and construction waste or yard waste from any member municipality.

In April 1990, the District adopted rules to govern its operations that were in effect at the time of the events giving rise to this action. These rules define "acceptable waste" as follows: "All ordinary household, municipal, commercial and industrial waste which consists primarily of combustible materials and which is not unacceptable waste." The rules list seven types of "unacceptable waste," but do not include demolition waste on this list. Until the District amended its rules in 1992, its rules did not contain an explicit policy toward the acceptance of demolition waste.

We conclude, therefore, that the acceptance of demolition waste and the assessment of fees for accepting such waste were matters reserved to the District's discretion. Simply put, the District had no obligation to accept the Phase II waste without charging a fee. Consequently, it was not inequitable for the District to charge Jordan a fee in an amount equal to that charged to it by the City of Rockland, and the Superior Court correctly granted a summary judgment in favor of the District on Jordan's claim for unjust enrichment. Having concluded that the District was not unjustly enriched, we need not address whether the Tort Claims Act affords a governmental entity immunity to suits for unjust enrichment.

The entry is:

Judgment affirmed.

All concurring.

---

**3.** Residential, commercial, and industrial solid waste are defined as follows:

A. Solid waste from "residential activities" includes any solid waste generated by a household or apartment, including, but not limited to, food waste, packaging, newspaper and other paper products, glass, cans and plastic, and similar types of waste generated by employees of commercial and industrial activities.

B. Solid waste from "commercial activities" includes any solid waste generated by retail and wholesale establishments, including, but not limited to, food waste, corrugated containerboard, metals and plastics.

C. Solid waste from "industrial activities" includes any solid waste generated by an industry as part of the production process. Solid waste generated by employees and similar in composition to that generated by residential or commercial activities is excluded from this definition.

38 M.R.S.A. § 1705(13) (1989).